IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DARRYL J. BERRY** and **ROSALINDA BERRY**, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-1288-L** |
| | § | |
| **FEDERAL NATIONAL MORTGAGE** | § | |
| **ASSOCIATION, and IBM LENDER** | § | |
| **BUSINESS PROCESS SERVICES, INC.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Final Summary Judgment, filed July 16, 2012;

Plaintiffs' Response to Defendants' Motion for Summary Judgment, filed August 13, 2012; and

Defendants' Reply in Support of Motion for Final Summary Judgment, filed August 27, 2012. After

careful consideration of the motion, response, reply, record, and applicable law, the court **grants**

**in part** and **denies in part** Defendants' Motion for Final Summary Judgment.

## I.      Background

Plaintiffs Darryl J. Berry ("Berry") and Rosalinda Berry (collectively, "Plaintiffs") originally

brought this lawsuit against Defendants Federal National Mortgage Association ("Fannie Mae") and

IBM Lender Business  Process Services, Inc. ("LBPS")[1] (collectively, "Defendants") in County

Court at Law No. 2, Dallas County, Texas, on June 6, 2011.  The action was removed by Defendants

---

[1] Defendants' Motion for Summary Judgment refers to Defendant IBM Lender Business Process Services, Inc. as "Seterus, Inc. f/k/a IBM Lender Business Process Services, Inc.," however, this defendant still appears on the docket sheet and in the caption of the filings in this action as "IBM Lender Business Process Services, Inc."  Therefore, the court refers to this entity as "LBPS" in this opinion.

**Memorandum Opinion and Order - Page 1**

to federal court on June 14, 2011, on the basis of diversity jurisdiction.  Plaintiffs allege various causes of action against Defendants arising out of Fannie Mae and LBPS's attempted foreclosure on the real estate owned by Plaintiffs located at 3188 Darvany Drive, Dallas, Texas 75220 ("the Property").  Plaintiffs' claims include those for breach of contract, anticipatory breach of contract, unreasonable collection efforts, malice, the Texas Debt Collection Practices Act ("TDCA"), and negligent misrepresentation.  Plaintiffs also seek an accounting, declaratory relief, mental anguish damages, exemplary damages, damages for the loss of creditworthiness and the stigma of foreclosure, damages for the value of time lost in attempting to correct Defendants' errors, attorney's fees, and costs of suit.

On November 29, 2007, Berry purchased the Property and executed a promissory note ("Note") payable to CTX Mortgage Company, LLC ("CTX").  Defs.' App. Ex. A-4, 8-11.  On the same day, Plaintiffs executed a deed of trust ("Deed of Trust") to secure the payment of the Note. Defs.' App. A-1, 7-23.  The Deed of Trust listed CTX as the lender and named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee for CTX.  *Id.* at 8.  According to Plaintiffs and Defendants, MERS eventually assigned the Deed of Trust to Fannie Mae, and Chase Home Finance, LLC ("Chase") later became the mortgage servicer for Plaintiffs' mortgage.  Defs.' App. Ex. A, 3; Pls.' App. 1.

According to Berry, in January 2009, he discovered "that although we had not missed a payment,"[2] Chase alleged he was in default.  Pls.' App. 2.  After investigating the matter, Berry

---

[2] Plaintiffs also state that they had not "missed a payment" in their First Amended Complaint" but they do not state whether they were current on their mortgage.  Pls. First Am. Compl. ¶ 9.  The court notes this distinction because the record reflects that Plaintiffs regularly made payments on the loan in 2008; however, several of these payments appear to be partial payments.  *See, e.g.*, Pls.' App. 6-7.  Plaintiffs in their responsive briefing, however, contend they "were current on their loan until Chase claimed that it had not posted payments to their account because some of the money orders were not legible."  Pls.' Br. in Support of Pls.' Resp. to Defs.' Mot. for Summ. J. 28.  Defendants dispute

learned that Chase had not been crediting payments to his account because "it had claimed that the money orders were illegible."[3]   Berry contends that after having all the money orders traced and refunded, he made a lump sum payment in mid-2009 to try to correct the payments that Chase said he had missed; however, because Chase assessed late fees and penalties, his account was still shown to be in default.  *Id.*  Plaintiffs dispute the amount owed due to Chase's alleged errors on the account. *Id.*

Berry contacted Chase about getting his account up-to-date.  *Id.*  According to Berry, Chase told him that they qualified for a loan modification.  *Id.*  On November 4, 2009, Berry signed a "Trial Period Plan" ("TPP")[4] in which he agreed, among other things, to make three monthly payments of $923.88 by the first of November and December 2009, and the first of January 2010, and to provide documents regarding his finances.  *Id.* at 9.   Under the TPP, Chase would suspend any pending foreclosure sale subject to Berry satisfying certain conditions during the TPP's "Trial Period," and Chase's tender of executed copies of the TPP and a loan modification agreement prior to the TPP's expiration date.  *Id.*  Berry contends that he made the scheduled payments pursuant to the TPP, and that at the end of the Trial Period, he contacted Chase to inquire about the status of the loan modification.  *Id.* at 2.  According to Berry, Chase's customer service representative informed him that the documents were "not yet ready," and to continue making the reduced payment until told

---

that Plaintiffs were current on the loan and contend that Plaintiffs defaulted by "failing to remit the required monthly mortgage payments."  Defs.' Br. in Support of Their Mot. for Final Summ. J. 4.

[3] Chase wrote Berry on January 14, 2009, informing him that it had "completed research on some of the money order receipts that you have provided." Pls.' App. 6.  The letter, in part, indicates that Chase had "no record of receiving money order #08968522548 (amount not legible), money order #200939822776 (amount not legible), money order #68011744812 (amount not legible), and money order #58019402056 (amount not legible)."  *Id.* at 7.  Chase later applied two of these money orders, 68011744812 and 200939822776, to Berry's loan.  *Id.* at 8.

[4] The TPP was not signed by Chase.

**Memorandum Opinion and Order - Page 3**

otherwise." *Id.* Berry continued to pay the reduced payment every month until mid-2010. *Id.* at 20-25, 35-39. At this time, Berry contends he was informed that Chase was no longer servicing his account and that the servicing of his loan was assigned to LBPS. *Id.* at 2.

According to Berry, LBPS contacted him in late 2010 and alleged that his loan was in default. *Id.* at 3. After Berry explained the history of his loan account and that he was waiting on his loan to be modified by Chase, Berry states that LBPS informed him that he would have to reapply for the modification and "to not worry, that we would be surprised at the quick turnaround for the loan modification." *Id.* Berry contends that he reapplied for loan modification. *Id.* Berry made a payment in March 2011, which LBPS accepted. *Id.* Plaintiffs then received a notice of default. *Id.* They also received a notice that the loan had been accelerated and that their home was posted for foreclosure sale on June 7, 2011. *Id.*

Plaintiffs then brought this action against Defendants on June 6, 2011. On December 5, 2011, Plaintiffs filed an Amended Complaint ("Complaint"). Defendants filed a counterclaim against Plaintiffs for breach of contract, suit on the note, and attorney's fees on April 27, 2012. Defendants also request a judgment permitting foreclosure on the Property pursuant to the Deed of Trust. On July 16, 2012, Defendants moved for summary judgment on all of Plaintiffs' claims and their counterclaims.

## II.  Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.*  (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Analysis

### A.    Breach of Contract and Anticipatory Breach of Contract

Although it is not clear from the Complaint, Plaintiffs appear to base their breach of contract claim on several grounds.[5] First, Plaintiffs appear to allege a breach of contract claim based on the TPP offered by Chase. Second, Plaintiffs allege breach of Defendant LBPS's oral promises to Plaintiffs that they would not foreclose on the Property while Plaintiffs were under review for a loan modification. Pls.' First. Am. Compl. ¶ 18; Pls.' Resp. to Defs.' Mot. for Summ. J. 7. Next, Plaintiffs contend that Defendants breached the Deed of Trust by failing to provide them with notice of their default and right to cure. Pls.' First Am. Compl. ¶ 18. Finally, Plaintiffs appear to allege

---

[5] The court notes that Plaintiffs initially challenged the validity of the assignment from MERS to Fannie Mae based on the "split-the-note" theory; however, in their response to Defendants' Motion to Dismiss, Plaintiffs withdrew this claim, and it is no longer before the court. Accordingly, the court does not address it.

**Memorandum Opinion and Order - Page 6**

a breach of contract claim based on Defendants' alleged waiver of the right to accelerate and foreclose.

        1.      <u>Breach of the TPP</u>

Plaintiffs contend that the TPP is an agreement in writing and is signed by Plaintiffs; that they performed under the contract by making the three required payments; that Chase accepted the payments, and, thus, Defendants are bound by the agreement and should have enforced it. Pls.' Br. in Support of Pls.' Resp. to Defs.' Mot. to Dismiss 8. Defendants counter that the TPP is not signed by Defendants, and, thus, there is no written and signed agreement between Plaintiffs and Defendants. Accordingly, Defendants argue, Plaintiffs' claim is barred by the statute of frauds.. Defs.' Reply in Support of Mot. for Final Summ. J. 2. The court agrees with Defendants that the TPP cannot serve as the basis of a breach of contract claim; however, the court makes this decision not on the grounds that the agreement is barred by the statute of frauds, but rather, on the grounds that it never constituted a binding contract, as the lack of Chases's signature establishes that it never expressed an intent to be bound by the TPP.

To prevail on a claim for breach of contract under Texas law, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal citation and quotation marks omitted). To prevail in a breach of contract claim, a plaintiff must show that the defendant failed to perform an act that it expressly or impliedly promised to perform. *Case Corp. v. Hi Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App. Dallas 2005, pet. denied). Texas law disfavors implied covenants and generally will not look beyond the parties' written

contract to imply a covenant unless it is "necessary to effectuate the parties' intent as disclosed by the contract as a whole, but not to make the contract fair, wise, or just." *Id.* at 770. "An implied covenant is necessary to effectuate the parties' intentions only if the obligation is 'so clearly within the contemplation of the parties that they deemed it unnecessary to express it.'" *Id.* (quoting *Nalle v. Taco Bell Corp*., 914 S.W.2d 685, 687 (Tex. App.   Austin 1996, writ denied)).

In construing contracts, the court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in the contract. *See Kelley Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, the court examines "the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Id.* When a contract is worded so that it can be given a definite legal meaning, it is unambiguous, and the court construes it as a matter of law. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

The Fifth Circuit recently considered whether a TPP like the one at issue in this case may constitute a binding agreement upon which a plaintiff may assert a breach of contract claim. *See Pennington v. HSBC USA, N.A.*, 493 F. App'x 548, at *4 (5th Cir. 2012). In *Pennington*, the court held that the "TPP did not form a contract, because the bank never expressed an intent to be bound." *Id.* In so holding, the court emphasized that the "TPP expressly requires that before the contract is final, the lender must send a signed copy to the borrower." Because the plaintiffs "neither produced

such a signed contract nor alleged such a signed contract exists," the court held that the TPP did not take effect, "so there could be no contract for the bank to breach."  *Id.*

Here, the TPP Plaintiffs signed contains the same, if not identical, language as the TPP in *Pennington*.   The TPP states: "This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature."  Pls.' App. 9.  Furthermore, the TPP provides that:

> I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification; (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.

*Id.* at 11.  Moreover, like the TPP in *Pennington*, the TPP here provides that it terminates "if the Lender does not provide [the borrower] a fully executed copy of this Plan and the Modification Agreement" prior to the Modification Effective Date."  *Id.* at 10.  Thus, it is clear that Chase did not intend be bound by the TPP.

Like the borrowers in *Pennington*, Plaintiffs here "neither produced such a signed contract nor allege such a signed contract exists."  *Pennington*, 493 F. App'x at *4.  Therefore, there is no evidence to suggest that the TPP ever took effect, and as such, there was no contract for Defendants to have breached.  *See id.*  Morever, because the TPP never took effect, no loan modification agreement stemming from Plaintiffs' successful performance under the TPP took place either. Accordingly, the court concludes that there is no genuine dispute of material fact as to Plaintiffs' claim for breach of the TPP, and Defendants are entitled to judgment as a matter of law on this claim.

**Memorandum Opinion and Order - Page 9**

2.      Breach of LBPS's Alleged Oral Promises Not to Foreclose

Plaintiffs also contend that after performing under the TPP, Defendants instructed them to continue making the payments until their loan had been modified; that instead, their loan was transferred to LBPS, who told them to reapply for a loan modification; and that they reapplied, but instead of receiving a loan modification, LBPS sent them a default notice and notice of a foreclosure sale. Plaintiffs allege that when they contacted LBPS, they were told to ignore the notices and that Defendants would not foreclose on the property while Plaintiffs were under review for a loan modification. Plaintiffs assert that LBPS's oral promise not to foreclose and to ignore the foreclosure notices created a unilateral contract. Pls.' First Am. Compl. ¶ 10; Pls.' Br. in Support of Pls.' Resp. to Defs.' Mot. to Dismiss 7, 10. Defendants respond that LBPS's alleged oral promise not to foreclose is unenforceable under the statute of frauds and because Plaintiffs have no evidence to support their claim. Defs.' Br. in Support of Their Mot. for Final Summ. J. 9-11.

In Texas, "[a] unilateral contract . . . is 'created by the promisor promising a benefit if the promisee performs'" and becomes enforceable once the promisee performs. *Vanegas v. American Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (quoting *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.   Dallas 2008, no pet.)). To prevail on a claim for anticipatory breach, a plaintiff must establish: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). "[W]hen one party to an agreement has repudiated it, the other party may then accept the agreement as being terminated or consider the repudiation as a breach of contract and bring suit for damages." *Id.* (quoting *Hauglum v. Durst*, 769 S.W.2d 646, 651 (Tex. App.   Corpus Christi 1989, no writ)). A defendant's duty to pay damages, however, is

"discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise." *Gonzalez*, 394 F.3d at 394-95 (quoting Restatement (Second) of Contracts § 254 (1981)).

The statute of frauds requires that certain specified classes of contracts be in writing to be enforceable. Tex. Bus. & Com. Code § 26.01. Section 26.02 of the Texas Business and Commerce Code provides that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." *Id.* § 26.02(b). Section 26.02 defines a loan agreement as:

> one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or *delays repayment of or agrees to loan or delay repayment of money*, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.

*Id.* § 26.02(a)(2) (emphasis added).

In Texas, oral modifications of a written contract subject to the statute of frauds are also subject to the statute of frauds if they materially alter the obligations imposed by the original contract. *Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984). Thus, agreements to modify an existing loan agreement, including agreements to "delay repayment of money" and "forego or delay foreclosure" are subject to the statute of frauds. *Milton v. U.S. Bank Nat'l Ass'n,* No. 12-40742, 2013 WL 264561, at *2 (5th Cir. Jan. 18, 2013) (per curiam); *Deuley v. Chase Home Fin., LLC*, Civ. A. No. H 0504253, 2006 WL 1155230, at *3 (S.D. Tex. Apr. 26, 2006); *Krudop v. Bridge City State Bank*, No. 09 05 111, 2006 WL 3627078, at *4 (Tex. App.  Beaumont Dec. 14, 2006, pet. denied) ("[A]ny agreement to forego or delay foreclosure . . . would fall under the provisions

of section 26.02(b), and be included under the definition of a loan agreement in section 26.02(a)(2).").

Because Plaintiffs' original Note was for $125,000 — an amount greater than $50,000 — it is subject to the statute of frauds. Any alleged agreement to modify Plaintiffs' loan or to forego foreclosure proceedings is directly contrary to and materially alters Chase's and Chase's successor's rights under the original Note and Deed of Trust, and thus would also be subject to the statute of frauds. *See Montalvo v. Bank of America Copr.*, 864 F. Supp. 2d, 567, 582 (W.D. Tex. 2012); *Deuley*, 2006 WL 1155230, at *3; *Krudop*, 2006 WL 3627078, at *4. Moreover, to the extent that Plaintiffs argue the alleged oral promise not to foreclose is not a modification of the existing agreement under the Note and Deed of Trust, but rather, constitutes a new, unilateral contract, the court also determines that this would be subject to the statute of frauds, and must be in writing to be enforceable. *Montalvo v. Bank of America Corp.*, 2013 WL 870088, at *8-9 (W.D. Tex. Mar. 7, 2013). This alleged oral agreement not to foreclose, however, was never reduced to writing, and as such, it is unenforceable. *See Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 137-38 (Tex. App. — Corpus Christi 2001, no pet.). Accordingly, Defendants are entitled to judgment on this claim unless the equitable exception urged by Plaintiffs applies.

Plaintiffs contend that the statute of frauds does not apply to their contract claim because they partially performed under the oral agreement. Under the partial performance exception, "contracts that have been partly performed, but do not meet the requirements of the Statute of Frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App. — Dallas 1985, no writ). "Virtual fraud" refers to fraud that arises "when there is strong evidence establishing the existence of an agreement and its terms, the

party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.   Dallas 2002, pet. denied).  The alleged partial performance "must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Id.*   Additionally, the partial performance "relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Id.* at 439-40.

"[N]o Texas court has clearly stated that the partial-performance exception applies to the loan-agreement statute of frauds." *Montalvo*, 864 F. Supp. 2d at 592 (citing *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.   Dallas, 2009, pet. dism'd w.o.j.)).  Even if the exception is applicable to loan agreements in Texas and the present case, the court determines that Defendants are entitled to dismissal of this claim because there is no evidence that establishes a partial performance on behalf of Plaintiffs that is unequivocally referable to the alleged oral agreement and corroborative of the fact that a contract was actually made.

Plaintiffs contend that their actions in reapplying for a loan modification, making a payment in March 2011, and "not taking any action to prevent the foreclosure sale," are unequivocally referable to the alleged oral agreement.  Pls.' Resp. to Defs.' Mot. for Summ. J. 9.  The court disagrees.  First, there is no evidence in the record to support Berry's contention that he "reapplied" for a loan modification with LBPS.  In fact, Plaintiffs' summary judgment evidence appears to contradict any alleged agreement with LBPS while they were under review for a loan modification.

Specifically, the court refers to a letter sent from Chase informing Plaintiffs that LBPS would be their new mortgage servicer. Pls.' App. 28-30. The letter suggests that Plaintiffs were still being reviewed under the same application for loan modification they initiated with Chase, which would then be transferred to LBPS for evaluation. *Id.* at 30. Plaintiffs were instructed to continue to making the trial payments in order to for LBPS to consider them for a modification. The letter provides:

> Home Affordable Modification Program: If you are currently participating in (or being considered for) a loan modification program, we will be transferring all of your documentation to the new servicer. Until the transfer date, you should continue to make your payments (e.g., trial payments if attempting to qualify for a modification under the Home Affordable Modification Program) to Chase Home Finance. After transfer, you should make all payments to LBPS until such time that you are provided additional direction. Decisions regarding qualification will be made by LBPS. All information regarding other loss mitigation activities (forbearance agreements, short sales, refinances and deed-in-lieu of foreclosure) will be forwarded to LBPS for processing. Please be advised that this transfer may extend the time need for a final decision.

*Id.* Thus, the evidence indicates, and Plaintiffs do not appear to dispute, that they were to continue making payments while under review for a loan modification. It appears, however, that Plaintiffs made no payments on the mortgage between August 2010 and March 2011. Making one single payment on the mortgage during a seven-month period while being considered for a loan modification is not "unequivocally referable" to any oral promise not to foreclose that LBPS allegedly may have made to Plaintiffs; in fact, its seems contrary to any arrangement the evidence suggests LBPS may have had with Plaintiffs. Moreover, not taking any steps to prevent foreclosure or making a partial or sporadic payment on a loan in default could have been formed with some design other than to fulfilled the alleged oral agreement. Therefore, the court determines that the even if the partial performance exception to the statue of fraud applied to loan agreements, there is

no competent summary judgment evidence that establishes the requisite partial performance for the exception to apply. Accordingly, the court determines that there is no genuine dispute of material fact as to Plaintiffs' claim for breach of LBPS's alleged oral promises not to foreclose, and Defendants are entitled to judgment as a matter of law on this claim.

3.    Waiver of Right to Accelerate and Foreclose[6]

Plaintiffs contend that Defendants waived their right to accelerate and foreclose by failing "to act from mid-2009 and lasting until the foreclosure sale on the Property in August 2011." Pls.' Resp. to Defs.' Mot. for Summ. J. 11. Defendants contend that the court should reject Plaintiffs' waiver argument because the Deed of Trust and the TPP demonstrate that Defendants did not intend to waive their right to enforce strictly the terms of the Note and the Deed of Trust. Defs.' Reply in Support of Mot. for Final Summ. J. 6. The court agrees.

"Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Explor. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). To establish waiver, the plaintiff must show: "(1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *G.H. Bass & Co. v. Dalsan Props.-Abilene*, 885 S.W.2d 572, 577 (Tex. App. Dallas 1994, no writ) (internal citations omitted). When waiver is based on inference, "it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that

---

[6] Plaintiffs assert that Defendants failed to acknowledge Plaintiffs' argument that Defendants waived their right to accelerate and foreclose, and, therefore, this claim is not properly before the court for dismissal. The Complaint's breach of contract section was not clearly written or organized, and only included a one-sentence reference to "waiver." It is only in Plaintiffs' responsive briefing that they clarify and articulate with some specificity the grounds upon which their breach of contract claim is based. Because Defendants seek dismissal of the entirety of Plaintiffs breach of contract claim, which is the claim in which Plaintiffs house their waiver argument, and because the Defendants specifically address the issue of waiver in their reply brief, the court determines that this claim is properly before the court for dismissal.

the opposite party unequivoca[l]ly manifested" its intent to no longer assert its claim." *Id.* (alteration in original) (citation and quotation marks omitted).

Plaintiffs specifically contend that Defendants have waived their right to accelerate and foreclose by acting inconsistently with its default powers in the following ways:

- Plaintiffs were offered and accepted a loan modification contingent on making the required payments under the trial payment plan. Plaintiffs made the payments but their loan was not modified.
- Defendants made Plaintiffs reapply for the loan modification, after they had alreadxy been approved and offered one.
- Plaintiffs made a payment in March 2011, which was accepted by Defendants.
- Defendants instructed Plaintiffs to ignore the foreclosure notices.

Pls.' Resp. to Defs.' Mot. for Summ. J. 13 (citations omitted).

None of the actions or omissions alleged by Plaintiffs can be construed as an unequivocal manifestation by Defendants of their intent to waive their right to accelerate and foreclose under the Note and the Deed of Trust. Instead, the summary judgment evidence establishes the opposite, namely, that Defendants repeatedly asserted their intent to maintain their right to accelerate and foreclose on the Property. The Note, the Deed of Trust, the TPP, and Chase and LBPS's written communications to Plaintiffs providing notice of their default and notice of sale expressly disclaim any intent by Defendants to waive their right to enforce strictly the terms of the Note or Deed of Trust.

For example, the TPP that Plaintiffs seek to enforce states that "all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." Pls.' App. 11. Moreover, the Deed of Trust allows Defendants to waive defects in one or more payments without waiving any future rights or remedies under the Deed of Trust: "Lender

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future . . . ." Defs.' App. Ex. A-1, ¶ 1.  The Deed of Trust also provides:

> **12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrowers. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the Original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitations, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

*Id.* ¶ 12.  In addition, the March 17, 2011 letter acknowledging Plaintiffs' March 2011 payment states: "Acceptance of this payment does not waive any of the creditor's rights relative to the loan. In fact, the creditor reserves each and all of its rights relative to the loan, including the right to initiate foreclosure and/or repossession proceedings based on the existing default." Pls.' App. 31. Accordingly, the court determines Plaintiffs have failed to raise a genuine dispute of material fact as to whether Defendants waived any right to accelerate the loan and foreclose on the property, and Defendants are entitled to summary judgment on this claim.

4.      Breach of Contract Claim Based on Opportunity to Cure

Plaintiffs contend that Defendants violated section 51.002 of the Texas Property Code and the Deed of Trust by failing to give them the opportunity to cure and reinstate the note. Pls.' First Am. Compl. ¶ 18.  Plaintiffs, however, "admit they received the notice of default and intent to accelerate," but argue instead that the notices were "withdrawn" or "nullified" because Plaintiffs were under review for a loan modification; they qualified for the modification; and they were told

by Defendants to ignore them.  Pls.' Resp. to Defs.' Mot. for Summ. J. 14.  Furthermore, Plaintiffs

argue that Defendants breached the Deed of Trust because Defendants' acceleration letter dated

April 22, 2011, does not state the exact amount due and Plaintiffs were not given 10 days notice to

identify and cure the delinquency as required by the Deed of Trust.  Pls.' Resp. to Defs.' Mot. for

Summ. J. 14; Defs.' App. Ex. A-3, 4. Defendants counter that the summary judgement evidence

establishes that Defendants provided Plaintiffs with all required notices in accordance with its

obligations under state law and pursuant to the Deed of Trust.  Defs.' Reply in Support of Mot. for

Final Summ. J. 7.  The court agrees.

Section 51.002 of the Texas Property Code sets forth the requirements for conducting a sale

of real property under a contract lien.  Section 51.002 requires mortgage servicers to provide the

debtor with notice of default and opportunity to cure, 20 days in advance of providing any notice of

sale.  Tex. Prop. Code § 51.002(d).[7]  The Deed of Trust requires the lender to give Plaintiffs notice

of default and an opportunity to cure the default within 30 days.  Defs.' App. A-1, 13, ¶ 22.  The

evidence shows that Defendants sent Plaintiffs at least two notices of default before the April 2011

acceleration letter.  The first notice, dated October 18, 2010, which was sent from LBPS to Berry,

identified the amount due on the loan, $20,636.17, and the due date by which to pay the amount,

November 22, 2010, which was more than the 20 days required under the Texas Property Code and

more than the 30 days required under the Deed of Trust to cure the default.  The second notice, dated

---

[7] Section 51.002(d) states in full: "Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20–day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period."  *Id.*

February 17, 2011, which was sent from LBPS to Berry, identified the amount due on the loan, $27,536.25, and the due date by which to pay the amount, March 24, 2011, which was more than the 20 days required under the Texas Property Code and more than the 30 days required under the Deed of Trust to cure the default.  Although the April 2011 letter did not identify the amount due on the loan, the summary judgment evidence establishes that by that point, Plaintiffs had already been sent two notices alerting them to the default, informing them of the amount due, and providing them with more time required under the law and the Deed of Trust to cure the default.  The court has already determined that the TPP and any alleged oral promises by Defendants are not enforceable, therefore, any claim by Plaintiffs that the TPP and the alleged oral promises somehow "nullified" the notices of default they received is without merit.  Accordingly, the court concludes that there is no genuine dispute of material fact as to Plaintiffs' claim for breach of the Deed of Trust based on Defendants' alleged failure to give them the opportunity to cure and reinstate the note, and Defendants are entitled to summary judgment on this claim.

**B.      Duty of Good Faith and Fair Dealing**

Plaintiffs allege in their Complaint that Defendants had an implied duty of good faith and fair dealing under the Note and violated this duty by accelerating Plaintiffs' payments under the Note.  Pls.' First. Am. Compl. ¶ 19.  Defendants contend that they are entitled to summary judgment on this claim because Texas law does not recognize a general duty of good faith and fair dealing in the mortgage loan context.  Defs.' Br. in Support of Their Mot. for Final Summ. J. 9.  The court agrees.

Under Texas law, absent a special relationship, there is no duty of good faith or fair dealing unless it is expressly created by contract.  *See UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App.  Corpus Christi 2005, pet. denied) ("[A]bsent a 'special

relationship,' any duty to act in good faith is contractual in nature and its breach does not amount to an independent tort.") (citations omitted). "Texas courts have found no special relationship between a mortgagor and a mortgagee . . . that would impose an independent common law duty of good faith and fair dealing." *Id.* (citing *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709-10 (Tex. 1990)).

Plaintiffs have not alleged or shown the existence of a duty of good faith and fair dealing created expressly by the Note or Deed of Trust nor a special relationship between Plaintiffs and Defendants recognized under Texas law that would imply such duties. Plaintiffs include in their Complaint, a one-sentence statement that such a duty is implied merely because of the imbalance of power between the mortgagee and mortgagor. Without anything more, the court declines to recognize a special relationship between Plaintiffs and Defendants that would give rise to the duty of good faith and fair dealing when Texas courts have not recognized such a relationship in the mortgage context. Accordingly, the court determines that there is no genuine dispute of material fact as to Plaintiffs' claim that Defendants had an implied duty of good faith and fair dealing and violated this duty, and Defendants are entitled to judgment as a matter of law on this claim.

### C.    Unreasonable Debt Collection

Plaintiffs allege in their Complaint that Defendants violated Texas common law by engaging in unreasonable collection efforts. Plaintiffs contend that they complied with all of Defendants' requests, but Defendants failed to give them a chance to reinstate or cure the default, and intentionally misled and delayed Plaintiffs to the point of foreclosure while assessing late charges and penalties. Pls.' First Am. Compl. ¶ 24. Plaintiffs argue that Defendants' allegedly wrongful foreclosure and assessment of numerous additional charges on Plaintiffs' mortgage account were

deceptive means of collecting on a debt. *Id.* In response to Defendants' motion, Plaintiffs contend that the following evidence supports their unreasonable collection claim:

- Plaintiffs were approved for a loan modification but Defendants never modified their loan.
- Defendants told Plaintiffs to ignore the foreclosure notices.
- Defendants failed to respond to Plaintiffs' reasonable requests for clarification of the status of their loan modification.
- Defendants failed to acknowledge the offer made by its predecessor, Chase, and instead made Plaintiffs go through the whole modification process again just to have their property posted for foreclosure sale.
- Defendants and its predecessor were misrepresenting the amount owed. On May 8, 2009 they indicated that Plaintiffs owed $3,668.70 and one day later, on May 9, 2009, they stated Plaintiffs owed $4,289.62.[8]

Pls.' Resp. to Defs.' Mot. for Summ. J. 16.

Defendants contend that they are entitled to summary judgment on this claim because the independent-injury rule bars Plaintiffs' claim. Defs.' Br. in Supp. of Their Mot. for Final Summ. J. 15-16. Defendants additionally argue that Plaintiffs have neither adduced any evidence showing that Defendants engaged in any sort of pattern of abusive and harassing behavior in an effort to force Plaintiffs to pay, nor incurred the sort of enduring and severe mental harm that would entitle them to mental anguish damages. *Id.* at 17. Plaintiffs appear to disagree with the standard for unreasonable collection efforts Defendants set forth, and, instead, argue that it is not necessary to plead or prove "willfulness or maliciousness" to recover actual damages for an unreasonable collection efforts claim. Pls.' Resp. to Defs.' Mot. for Summ. J. 16.

---

[8] Plaintiffs actually state that this is "evidence that Wells Fargo exceeded the bounds of reason." Pls.' Resp. to Defs.' Mot. for Summ. J. 16. Wells Fargo, however, is not a party to this action and has never been one. The court concludes that this was a mistake on the behalf of Plaintiffs, and that Plaintiffs intended to state that this was evidence that one of the defendants or both, exceeded the bounds of reason. The court warns Plaintiffs that copy and pasting portions of other pleadings and briefs is unacceptable and will not be tolerated by this court.

The Fifth Circuit in *De Francheschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200 (5th Cir. May 17, 2012), affirmed summary judgment for the defendant on the plaintiffs' claim of unreasonable collection efforts when the district court applied the standard found in *EMC Mortgage Corporation v. Jones*, 252 S.W.3d 857, 868 (Tex. App.    Dallas 2008, no pet.), concluding that "the district court did not err in adopting the standard set forth in *EMC Mortgage Corp v. Jones* . . . instead of the standard in *Employee Finance Co. v. Lathram*, 363 S.W.2d 899, 901 (Tex. Civ. App.    Fort Worth 1962), *aff'd in part, rev'd in part, on other grounds,* 369 S.W.2d 927 (Tex. 1963), which has largely been disavowed by Texas courts." *Id.* at *3 (citing *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 734 (E.D. Tex.2011)).  The court therefore applies the standard set forth in *Jones* and concludes that the conduct alleged by Plaintiffs does not, as a matter of law, rise to a level of "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."  252 S.W.3d at 868.

The court disagrees with Plaintiffs that "Defendants instructing Plaintiffs to reapply for the loan modification after they had already been approved and completed to [sic] the trial payment plan and instructing Plaintiffs to ignore foreclosure notices was malicious and wanton."  Pls.' Resp. to Defs.' Mot. for Summ. J. 17.  The court has already determined that the TPP alone did not constitute a loan modification; there is nothing in the record to establish that Plaintiffs were "approved" for any loan modification; and the alleged oral promises not to foreclose are unenforceable.  As such, the court finds that there is no evidence to suggest actions on Defendants' part that would "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."

Moreover, other courts considering the same issue have concluded that the same or similar conduct alleged by Plaintiffs is not sufficient to sustain a claim for unreasonable collection efforts. *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 814-15 (N.D. Tex. 2012) (concluding that defendant's alleged failure to give the plaintiff a chance to reinstate or cure the default; intentionally misleading and delaying the plaintiff to the point of foreclosure; assessing late charges, penalties, and other additional charges; and improperly placing the property in foreclosure did not constitute unreasonable collection efforts); *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10 CV 2414 B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (rejecting plaintiffs' unreasonable collection effort claim based on lender's alleged failure to provide information regarding the right to cure or potential loan modification, promising not to foreclose, and foreclosing after accepting payments under the loan modification trial plan and concluding that "the Court is unaware of and Plaintiffs have provided no authority as to how promising not to foreclose on a property, can, without more, be considered willful, wanton, or malicious harassment"); *Moye v. Federal Home Loan Mortg. Corp.*, No. H-12-0502, 2012 WL 3048858, at *5 (S.D. Tex. Jul. 25, 2012) ("[C]aselaw does not support a notion that the action of making or breaking an express promise is itself willful, wanton, and malicious. There is no indication that Defendants intended to inflict bodily harm by sending letters to the Plaintiff.") (citations and parenthetical omitted); *Mitchell v. Chase Home Fin. LLC*, No. 3:06 CV 2099 K, 2008 WL 623395, at *6 (N.D. Tex. Mar. 4, 2008) (holding that defendant's collection efforts in seeking sums owed were not unreasonable because plaintiffs were in default on their loan and evidence demonstrated that the defendant provided plaintiffs with "several acceleration warning letters, advised them to seek emergency homeowner counseling, and worked with them to provide loss mitigation options such as the Partial Claim and

the Repayment Plan."). The court determines the same result is warranted here. Accordingly, the court determines that Plaintiffs have failed to raise a genuine dispute of material fact regarding any type of harassment or malicious conduct by Defendants in its debt collection efforts, or whether Defendant's attempts to collect the amounts owed by Plaintiffs were unreasonable, and Defendants are entitled to summary judgment on this claim.

### D.    Malice

In connection with their unreasonable collection efforts cause of action, Plaintiffs plead malice against Defendants and request exemplary damages. Pls.' First Am. Compl. ¶¶ 27-28. Defendants counter that as Plaintiffs cannot prevail on their underlying unreasonable collection efforts claim, they likewise cannot prove malice. Defs.' Br. in Supp. of Their Mot. for Final Summ. J. 17. The court agrees.

Exemplary damages must be proved by clear and convincing evidence that the harm suffered by Plaintiffs resulted from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003(a). Because the court has already determined that Plaintiffs have not produced any competent summary judgment evidence to support their claim that Defendants' alleged conduct amounted to a course of harassment that was willful, wanton, and malicious, the court determines, as a matter of law, that Plaintiffs have not proved by clear and convincing evidence that Defendants' alleged conduct arises to the level of malice. Accordingly, Defendants are entitled to summary judgment on this claim.

### E.    TDCA

The TDCA permits a consumer to sue for threats, coercion, harassment, abuse, unconscionable collection methods, or misrepresentations made in connection with the collection

of a debt.  Tex. Fin. Code § 392.001, *et seq.*  The TDCA defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5).  A "debt collector" under the TDCA "means a person who directly or indirectly engages in debt collection." *Id.* § 392.301(6).  Section 392.301(a)(8) relied on by Plaintiff prohibits a debt collector from "threatening to take an action prohibited by law."  This court has previously held that the TDCA contemplates acts of foreclosure on real property.  *Marquez v. Federal Nat'l Mortg. Ass'n*, 3:10-CV-02040-L, 2011 WL 3714623, at *4 (N.D. Tex. Aug. 23, 2011).  Plaintiff has asserted TDCA claims under sections 392.301(a)(8), 392.303(a)(2), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code.  Pls.' First Am. Compl. ¶ 32.

      1.    <u>Section 392.301(a)(8)</u>

Section 392.301(a)(8) prohibits debt collectors from using threats, coercion, or attempts to coerce by "threatening to take an action prohibited by law."  Tex. Fin. Code § 392.301(a)(8).  Plaintiffs contend that Defendants violated this provision by causing their attorneys to attempt to foreclose upon Plaintiffs' property.  According to Plaintiffs, Defendants were prohibited by law from foreclosing and selling the Property, as their rights to accelerate and foreclose had never matured because Defendants did not comply with the Deed of Trust, the assignment from MERS to Fannie Mae is not valid, and Plaintiffs accepted a loan modification offer that Defendants failed to honor.  Defendants counter that they had the right to collect and to foreclose on the Property.

The court determines that there is no evidence of a violation of this provision of the TDCA.  As already indicated, Plaintiffs have not proved, or raised a genuine dispute of material fact, that Defendants breached, or otherwise violated the terms of the Deed of Trust.  The record establishes that the TPP itself was not an offer for a loan modification but instead was an offer for the

opportunity to be considered for a loan modification.  Further, Plaintiffs have withdrawn their claim that the assignment from MERS to Fannie Mae is invalid and have not otherwise produced evidence to show that the assignment was invalid.  As such, the court does not consider this argument in connection with Plaintiffs' TDCA claims.  Because Plaintiffs have failed to raise a genuine dispute of material fact as whether Defendants threatened to take an action prohibited by law under section 392.301(a)(8) , the court concludes that Defendants are entitled to judgment as a matter of law with respect to this claim.

2.     Section 392.303(a)(2)

Section 392.303(a)(2) prohibits debt collectors from using "unfair or unconscionable means" in "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2). "Notwithstanding Subsection (a)(2), a creditor may charge a reasonable reinstatement fee as consideration for renewal of a real property loan or contract of sale, after default, if the additional fee is included in a written contract executed at the time of renewal." *Id.* § 392.303(b). Neither section 392.303 nor the TDCA defines "unfair or unconscionable means," although sections 392.301, 392.302, and 392.304 list prohibited practices referred to as threats or coercion, harassment or abuse, and fraudulent, deceptive, or misleading representations.

Plaintiffs contend that their account was assessed with wrongful charges and fees, and cite to account statements in the record dating from August 2009 to October 2010.  Pls.' Resp. to Defs.' Mot. for Summ. J. 21.  There is nothing in the record to suggest that Defendants used any "unfair or unconscionable means," of collecting interest or other fees that were not expressly authorized by

the Note or Deed of Trust or that were not otherwise legally chargeable to the consumer.  While it does appear from the record that there were at least two payments Plaintiffs made by money order that were not originally accounted for by Chase prior to January 2009, the record shows that Chase researched them and ultimately applied them to Plaintiffs loan.  Pls.' App. 6-8.  There were two more money orders for which Plaintiffs provided receipts; however, Chase could not find them and requested that Plaintiffs have the company from which they purchased them to put a trace on them.  *Id.* at 8.  There is nothing in the record to inform the court as to what happened with these two missing money orders.  Moreover, because Plaintiffs do not include in their summary judgment evidence any account statements from the period prior to January 2009, the court is unable to determine whether there were any late fees charged to Plaintiffs' account improperly in connection with these money orders.  Plaintiffs, in their responsive brief, state, "There was confusion as to the money orders being sent, but that had been resolved."  Pls.' Resp. to Defs.' Mot. for Summ. J. 21.  As Plaintiffs allege nothing further or produce no further evidence regarding the unaccounted for money orders or any fees that may have been associated with them,  the court construes Plaintiffs' section 392.303(a)(2) claim to be based on fees assessed from August 2009 to October 2010, and not on any fees that may have been assessed in connection with the money orders from the time period prior to January 2009.

Moreover, Plaintiffs allege that they were provided with an inaccurate amount due on the loan, but they do not attempt to allege or otherwise show what they believe the correct amount due on the loan to be.  *Id.* at 22.  Plaintiffs merely cite to a notice of default from Chase dated May 8, 2009, stating Plaintiffs owed $3,668.70, and Plaintiffs' monthly statement dated May 9, 2009, reflecting Plaintiffs owed $4,289,62. *Id.*; Pls.' App. 42-44.  According to Plaintiffs, this is sufficient

to show that Defendants and their predecessor have provided them with an inaccurate amount due on the loan. The court disagrees. These two documents alone are insufficient to show that Chase was improperly charging Plaintiffs fees or otherwise providing them with an inaccurate amount due on the loan, as there could be a number of reasons why the amount Plaintiffs owe could have changed the next day. For instance, the default notice printed on May 8, 2009, could not have not yet reflected the amount due on the loan after Plaintiffs failed to make their May 1, 2009 payment, and the monthly statement printed on May 9, 2009, could have included this amount. Without anything more, the court concludes that Plaintiffs have failed to raise a genuine dispute of material fact as to their section 392.303(a)(2) TDCA claim, and Defendants are entitled to judgment as a matter of law on this claim.

3.    Sections 392.304(a)(8) and 392.304(a)(19)

Section 392.304 generally prohibits a debt collector from using "fraudulent, deceptive, or misleading representation[s]" in collecting on debts and obtaining information concerning a consumer. Tex. Fin. Code § 392.304. Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." *Id.* § 392.304(a)(8). Section 392.304(a) (19) operates as a "catch-all" provision and prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* § 392.304(a)(19).

In support of these two claims, Plaintiffs reurge the same arguments underlying their breach of contract claims, which the court has already addressed. Specifically, Plaintiffs state that they were offered and accepted a loan modification, contingent on their performance under the TPP; they fully

performed under the TPP and even continued performing per Chase's instructions; their loan was transferred to LBPS; the notice of transfer stated that the transfer did not affect any of the contracts, which would include the TPP and loan modification; LBPS alleged Plaintiffs were in default instead of honoring the contract that had been performed; they reapplied for a loan modification with LBPS; and LBPS initiated foreclosure proceedings while simultaneously telling them to ignore the notices. Pls.' Resp. to Defs.' Mot. for Summ. J. 20. The court has already determined that Plaintiffs have not produced any competent summary judgment evidence showing that Defendants supplied Plaintiffs with false or untrue information regarding their loan or used any otherwise deceptive means to collect the debt. Accordingly, the court concludes that Plaintiffs have failed to raise a genuine dispute of material fact as to these two claims, and Defendants are entitled to summary judgment on these claims.

### F.      Negligent Misrepresentation

Defendants contend that Plaintiffs' negligent misrepresentation claims are barred by the economic loss doctrine because the factual allegations contained in Plaintiffs' Complaint in support of their tort claims relate solely to breaches of the alleged oral/unenforceable agreements at issue in this suit. Defs.' Br. in Supp. of Their Mot. for Final Summ. J. 20; Defs.' Reply in Supp. of Defs.' Mot. for Final Summ. J. Br. 8. Defendants also argue that they are entitled to summary judgment on Plaintiffs' negligent representation claim because Plaintiffs have no evidence that Defendants supplied false information. Defs.' Br. in Supp. of Their Mot. for Final Summ. J. at 21.

Under Texas law, when "the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Thus, tort damages are generally not recoverable if the defendants' conduct "would

give rise to liability only because it breaches the parties' agreement." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991).  Tort damages are recoverable, however, if the defendants' conduct "would give rise to liability independent of the fact that a contract exists between the parties." *Id.*  In other words, the defendant must breach a duty imposed by law rather than by contract.  *Id.*

Plaintiffs argue that their negligent misrepresentation claim is not barred by the economic loss rule because they have alleged more than contractually-based damages.  Pls.' Resp. to Defs.' Mot. for Summ. J. 22.  Specifically, Plaintiffs argue they have presented evidence of both personal injuries and property damage, not just economic harm.  Furthermore, Plaintiffs reiterate that "there was no direct written contractual relationship that existed between Plaintiffs and Defendants. Instead, an oral/unilateral agreement existed between the parties."  *Id.*

Defendants counter that "a plaintiff may not recover damages in tort for claims arising out of an unenforceable contract under the statute of frauds."  *Hugh Symons Group v. Motorola, Inc.*, 292 F.3d 466, 470 (5th Cir. 2002) (citing *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001)). Defendants are correct in that under Texas law, generally a plaintiff may not recover in tort for claims arising out of an unenforceable contract.  To the extent, however, that a plaintiff's claim seeks "out-of-pocket damages incurred by relying upon a defendant's misrepresentations, those damages are not part of the benefit of any bargain between the parties," and might be recoverable without contravening the statute of frauds.  *Id.*

The court determines that Plaintiffs' alleged economic loss arises solely from their contractual relationship with Defendants under the Note and Deed of Trust and is barred by the economic loss doctrine.  To the extent that Plaintiffs alleged other damages such as that for "constant

worrying and depression," "anxiety and stress," or loss of creditworthiness    these damages do not appear to be the type of "out-of-pocket" damages contemplated by Texas courts that may allow recovery without contravening the statute of frauds.  *See, e.g., Haase*, 62 S.W.3d at 799-800 (holding that a franchise applicant's claim for out-of-pocket damages spent on a surveyor and on a location site for a franchise that he never secured may survive the statute of frauds).

Even assuming Plaintiffs might be able to recover such damages in connection with a contract that fails to comply with the statute of frauds, the court determines that Plaintiffs have failed to raise a genuine dispute of material fact regarding their negligent misrepresentation claim. The elements of a negligent misrepresentation cause of action are: (1) the defendant made a representation to the plaintiff in the course of defendant's business or in a transaction in which the defendant had an pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business transactions; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information;(4) the plaintiff justifiably relied on the representation; and (5) the defendant's negligent misrepresentation proximately caused the plaintiff's injury.  *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex.1999)*; see also Rhey v. Redic*,     S.W.3d    , No. 08-11-00069-CV, 2013 WL 1150197, at *3 (Tex. App.    El Paso Mar. 20, 2013, no pet.).  Here, Plaintiffs have not shown that Defendants have provided them with false information.  Moreover, the court finds that any reliance on the part of Plaintiffs on Defendants' alleged promise not to foreclose, in spite of receiving several default and foreclosure notices, was neither reasonable nor justifiable.  Accordingly, the court determines that there is no genuine dispute of material fact as to Plaintiffs' claim for negligent misrepresentation, and Defendants are entitled to judgment as a matter of law on this claim.

### G.   Defendants' Counterclaims

Defendants also move for summary judgment on their counterclaims against Plaintiffs for: (1) breach of contract; (2) suit on the note; and (3) attorney's fees and court costs.  Defs.' Br. in Supp. of Their Mot. for Final Summ. J. 23-25.

### 1.   Breach of Contract

Defendants contend that the evidence shows that there was a written contract between the parties; Fannie Mae, via its predecessor CTX, performed under the terms of the Note by lending Berry the principal amount of $125,000; under the terms of the Note, Berry promised to make monthly payments; and that Plaintiffs have not made a mortgage payment since March 2011, and Plaintiffs admit they have not made a mortgage payment on the Note since at least December 2011 and remain in default. Thus, Defendants argue, Plaintiffs are behind on payments on the Note, and have therefore breached the terms of the Note.  According to Defendants, Plaintiffs' failure to tender payments have caused them injury because they are not collecting all amounts owed on the loan.  As a remedy for breach, Defendants argue they are entitled to an order of foreclosure.  In response, Plaintiffs offer no evidence to contradict any of this but instead repeat the arguments raised in support of their own breach of contract claim, which this court has already rejected.

The evidence establishes that there is a valid and enforceable contract between the Plaintiffs and CTX; that CTX performed by lending Plaintiffs money to purchase the home; and that Plaintiffs were required to make monthly payments on the loan.  Berry admits not making any payments since he filed the lawsuit and only admits to making one payment since the loan was transferred to LBPS

in October 2010.  *See* Defs.' App. Ex. B, 65[9]; Pls.' App. 3.  Thus, the court finds that Plaintiffs failed

to make all the requisite payments under terms of the Note and Deed of Trust.  Accordingly, the

court determines that Defendants have established there was a breach; however, the inquiry does not

end there, as the contract that Plaintiffs' breached was not between Plaintiffs and Defendants.

It is undisputed that the Defendants LBPS and Fannie Mae were not parties to the Note or

Deed of Trust, and are seeking enforcement of the Note and Deed of Trust as non-parties to such

agreements.  Generally, a non-contracting party to an agreement has no interest in the contract.

*Drilltec Techs., Inc. v. Remp*, 64 S.W.3d 212, 215 (Tex. App.    Houston 2011, no pet.).  Thus, "only

the parties to a contract have the right to complain of a breach thereof."  *Copeland v. Alsobrook*,

3 S.W.3d 598, 608 (Tex. App.    San Antonio 1999, pet. denied).  Defendants, however, contend that

they are entitled to complain of Plaintiffs' breach of the Note and the Deed of Trust because they are

assignees of the interests in the Note and Deed of Trust.  An "assignee . . . stands in [an assignor's]

shoes and may assert only those rights that [the assignor] himself could assert."  *Gulf Ins. Co. v.

Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000).  The court notes, however, that Defendants

have not produced any evidence to show that Fannie Mae was assigned the Note and/or Deed of

Trust, and, thus, is the legal owner and holder of the Note and/or Deed of Trust.  The only purported

evidence of such an assignment in the record is a declaration of a LBPS employee, Enan Del Rio,

who states, "Through assignment and transfer, Fannie Mae acquired the Deed of Trust and Note

encumbering the Property.  Fannie Mae is the current holder and owner of the Note."  Defs.' App.

---

[9] In Berry's deposition, opposing counsel asks, "Is it fair—this lawsuit was filed in December 2011," to which Berry replied, "Okay."  Then opposing counsel asked, "Have you made a payment to LBPS since you filed this lawsuit?" Berry answered, "No."  Defs.' App. Ex. B, 26.  The court notes, however, that this lawsuit was not filed in December 2011, but rather, it was filed in June 2011.  Thus, the court concludes that Berry only admitted to not making payments since the date the lawsuit was filed, which was June 2011.

Ex. A, 3, ¶ 7.  In his declaration, Mr. Rio avers that his statements are based upon his review of "the documents in [LBPS's] possession." *Id.* at 2, ¶ 3.  It is not clear which documents were in LBPS's possession at the time that he relied upon in making the declaration; however, at the end of the declaration, Mr. Rio states that records attached to the declaration are the business records of LBPS, kept in the regular course of business. *Id.* at 4-5, ¶ 11.  He further states that "[t]hese records are also identified as exhibits to this Declaration," and identifies Defendants' exhibits in the appendix to their summary judgment motion, which are: (1) the Deed of Trust; (2) the October 18, 2010 Notice of Default and Intent to Accelerate; (3) the April 22, 2011, Reinstatement Letter; (4) Plaintiff Berry's Note; and (5) the February 17, 2011 Notice of Default and Intent to Accelerate.  *Id.*  There are no copies of any assignment included on the list or in Defendants' appendix showing that Fannie Mae was assigned the Note and/or Deed of Trust.

At best, Mr. Rio *assumes* that Fannie Mae was assigned the Note and/or Deed of Trust.  The court cannot accept an assumption absent it being supported by competent evidence.  Further, it appears that Mr. Rio makes an impermissible conclusion regarding the assignment.  In other words, his statement regarding an assignment is not based on personal knowledge as required by Rule 602 of the Federal Rules of Evidence, or based upon a business record pursuant to Rule 803(6) of the Federal Rules of Evidence.  This misstep could have easily been avoided by Defendants producing a certified or verified copy of the assignment or assignments showing that Fannie Mae is the assignee of the Note and/or Deed of Trust.  That Plaintiffs do not dispute that Fannie Mae is the current holder of the Note is of no moment.  While there is evidence of a breach, there is no evidence to affirmatively show that the entity that may bring this breach of contract claim is Fannie Mae.

**Memorandum Opinion and Order - Page 34**

Thus, the court determines that Defendants have not conclusively proved all the elements for their breach of contract claim because there exists a genuine dispute of material fact as to whether Defendant Fannie Mae is the entity that currently holds the Note and/or Deed of Trust. Therefore, Defendants not entitled to summary judgment on this claim.

2.      Suit on the Note

Defendants argue that they are further entitled to summary judgment on their counterclaim against Plaintiffs for suit on the Note due to Plaintiffs' failure to tender full and timely payments as required under the Note.

In order to recover under the Note, Defendants "need not prove all essential elements of a breach of contract, but only must establish the note in question, that [defendant] signed the note, that [plaintiff] was the legal owner and holder thereof, and that a certain balance was due and owing on the note." *Clark v. Dedina*, 658 S.W.2d 293, 295-96 (Tex. App.   Houston [1st Dist.] 1983, writ dism'd) (citation omitted); *see also Hudspeth v. Investor Collection Serv. Ltd. P'ship*, 985 S.W.2d 477, 479 (Tex. App.   San Antonio 1998, no pet.).

The court also determines that Defendants have failed to establish all the elements to recover under the Note because Defendants have not demonstrated that Fannie Mae is the assignee of the Note and/or Deed of Trust, and, thus, is the legal owner and holder of the Note and/or Deed of Trust. Because there is a genuine dispute of material fact as to whom is the legal owner and holder of the note, which is one of the essential elements to recover under the Note, the court concludes that Defendants are not entitled to judgment as a matter of law on this claim.

3.      Attorney's Fees and Costs

Defendants request attorney's fees and costs associated with its breach of contract and suit

on the note counterclaims.  Defs.' Br. in Supp. of Their Mot. for Final Summ. J. 24-25.  The court,

however, has determined that Defendants are not entitled to summary judgment as to these claims,

and therefore concludes that they are not entitled to an award of attorney's fees and costs, as they

have not prevailed on either counterclaim.

**H.      Request for Accounting and Declaratory Judgment**

The federal declaratory judgment act ("FDJA") is a procedural device that creates no

substantive rights.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).  Consequently,

the FDJA provides no relief unless there is a justiciable controversy between the parties.  *See id.*  A

plaintiff seeking injunctive or declaratory relief must allege a "substantial and continuing"

controversy:

> In order to demonstrate that a case or controversy exists to meet the Article
> III standing requirement when a plaintiff is seeking injunctive or declaratory relief,
> a plaintiff must allege facts from which it appears there is a substantial likelihood that
> he will suffer injury in the future. Based on the facts alleged, there must be a
> substantial and continuing controversy between two adverse parties. The plaintiff
> must allege facts from which the continuation of the dispute may be reasonably
> inferred. Additionally, the continuing controversy may not be conjectural,
> hypothetical, or contingent; it must be real and immediate, and create a definite,
> rather than speculative, threat of future injury.
>
> Past exposure to illegal conduct does not in itself show a present case or
> controversy regarding injunctive relief . . . if unaccompanied by any continuing,
> present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must
> demonstrate either continuing harm or a real and immediate threat of repeated injury
> in the future. Similar reasoning has been applied to suits for declaratory judgment.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted).  Thus, "a

declaratory judgment is merely a form of relief that a court may grant based on an underlying claim."

*DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 626 (N.D. Tex. 2011) (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990)). As explained and determined herein, there is no genuine dispute of material fact regarding any of Plaintiffs' claims. As a result, there is no underlying claim for the court to adjudicate. *See Val Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 F. App'x 398, 400-01 (5th Cir. 2011) (per curiam). Plaintiffs' request for an accounting is likewise equitable in nature and does not constitute an independent cause of action. Moreover, the request for an accounting is mooted by the court's rulings as to Plaintiffs' claims. *DeFranceschi*, 837 F. Supp. 2d at 627. Accordingly, Plaintiffs' request for declaratory judgment relief and an accounting is denied as moot, and Defendants are entitled to judgment as a matter of law on this claim.

## IV.    Conclusion

For the reasons herein stated, the court determines that no genuine dispute of material fact exists as to any of Plaintiffs' claims and that there is a genuine dispute of material fact with respect to Defendants' counterclaims against Plaintiffs. Accordingly, the court **grants in part and denies in part** Defendants' Motion for Final Summary Judgment. The court **grants** Defendants' Motion for Final Summary Judgment regarding Plaintiffs' claims against Defendants and **dismisses them with prejudice** . The court **denies** Defendants' Motion for Final Summary Judgment to the extent that it requests the court to grant summary judgment on Defendants' counterclaims against Plaintiffs for: (1) breach of contract; (2) suit on the note; and (3) attorney's fees. For the reasons herein stated, the court determines that there exists a genuine dispute of material fact as to these claims, and accordingly, they remain for trial or other resolution.

**It is so ordered** this 29th day of March, 2013.

Sam A. Lindsay
United States District Judge