IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DARRYL J. BERRY and** | § | |
| **ROSALINDA BERRY,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-1288-L** |
| | § | |
| **FEDERAL NATIONAL MORTGAGE** | § | |
| **ASSOCIATION and IBM LENDER** | § | |
| **BUSINESS PROCESS SERVICES, INC.,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendants' Second Motion for Summary Judgment (Doc. 60), filed May 3, 2013. After careful consideration of the motion, response, reply, surreply, record, and applicable law, the court **grants** Defendants' Second Motion for Summary Judgment.

## I.     Background

Plaintiffs Darryl J. Berry ("Berry") and Rosalinda Berry (collectively, "Plaintiffs") originally brought this lawsuit against Defendants Federal National Mortgage Association ("Fannie Mae") and IBM Lender Business Process Services, Inc. ("LBPS") (collectively, "Defendants") in County Court at Law No. 2, Dallas County, Texas, on June 6, 2011. The action was removed by Defendants to federal court on June 14, 2011, on the basis of diversity jurisdiction. Plaintiffs alleged various causes of action against Defendants arising out of Fannie Mae and LBPS's attempted foreclosure on the real estate owned by Plaintiffs located at 3188 Darvany Drive, Dallas, Texas 75220 ("the Property"). Plaintiffs' claims included those for breach of contract, anticipatory breach of contract, unreasonable collection efforts, malice, the Texas Debt Collection Practices Act ("TDCA"), and

**Memorandum Opinion and Order – Page 1**

negligent misrepresentation.  Plaintiffs also sought an accounting, declaratory relief, mental anguish damages, exemplary damages, damages for the loss of creditworthiness and the stigma of foreclosure, damages for the value of time lost in attempting to correct Defendants' errors, attorney's fees, and costs of suit.

On November 29, 2007, Berry purchased the Property and executed a promissory note ("Note") payable to CTX Mortgage Company, LLC ("CTX").  Defs.' App. Ex. A-4, 8-11.  On the same day, Plaintiffs executed a deed of trust ("Deed of Trust") to secure the payment of the Note. Defs.' App. A-1, 7-23.  The Deed of Trust listed CTX as the lender and named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee for CTX.  *Id.* at 8.  According to Plaintiffs and Defendants, MERS eventually assigned the Deed of Trust to Fannie Mae, and Chase Home Finance, LLC ("Chase") later became the mortgage servicer for Plaintiffs' mortgage.  Defs.' App. Ex. A, 3; Pls.' App. 1.

According to Berry, in January 2009, he discovered "that although we had not missed a payment,"[1] Chase alleged he was in default.  Pls.' App. 2.  After investigating the matter, Berry learned that Chase had not been crediting payments to his account because "it had claimed that the money orders were illegible."[2]  Berry contends that after having all the money orders traced and

---

[1] Plaintiffs also state that they had not "missed a payment" in their First Amended Complaint" but they do not state whether they were current on their mortgage.  Pls. First Am. Compl. ¶ 9.  The court notes this distinction because the record reflects that Plaintiffs regularly made payments on the loan in 2008; however, several of these payments appear to be partial payments.  *See, e.g.*, Pls.' App. 6-7.  Plaintiffs in their responsive briefing, however, contend they "were current on their loan until Chase claimed that it had not posted payments to their account because some of the money orders were not legible."  Pls.' Br. in Supp. of Pls.' Resp. to Defs.' Mot. for Summ. J. 28.  Defendants dispute that Plaintiffs were current on the loan and contend that Plaintiffs defaulted by "failing to remit the required monthly mortgage payments."  Defs.' Br. in Supp. of Their Mot. for Final Summ. J. 4.

[2] Chase wrote Berry on January 14, 2009, informing him that it had "completed research on some of the money order receipts that you have provided."  Pls.' App. 6.  The letter, in part, indicates that Chase had "no record of receiving money order #08968522548 (amount not legible), money order #200939822776 (amount not legible), money order #68011744812 (amount not legible), and money order #58019402056 (amount not legible)."  *Id.* at 7.  Chase later

refunded, he made a lump sum payment in mid-2009 to try to correct the payments that Chase said

he had missed; however, because Chase assessed late fees and penalties, his account was still shown

to be in default.  *Id.*  Plaintiffs dispute the amount owed due to Chase's alleged errors on the account.

*Id.*

Berry contacted Chase about getting his account up-to-date.  *Id.*  According to Berry, Chase

told him that they qualified for a loan modification.  *Id.*  On November 4, 2009, Berry signed a "Trial

Period Plan" ("TPP")[3] in which he agreed, among other things, to make three monthly payments of

$923.88 by the first of November and December 2009, and the first of January 2010, and to provide

documents regarding his finances.  *Id.* at 9.  Under the TPP, Chase would suspend any pending

foreclosure sale subject to Berry satisfying certain conditions during the TPP's "Trial Period," and

Chase's tender of executed copies of the TPP and a loan modification agreement prior to the TPP's

expiration date.  *Id.*  Berry contends that he made the scheduled payments pursuant to the TPP, and

that at the end of the Trial Period, he contacted Chase to inquire about the status of the loan

modification.  *Id.* at 2.  According to Berry, Chase's customer service representative informed him

that the documents were "not yet ready," and to continue making the reduced payment until told

otherwise."  *Id.*  Berry continued to pay the reduced payment every month until mid-2010.  *Id.* at 20-

25, 35-39.  At this time, Berry contends he was informed that Chase was no longer servicing his

account and that the servicing of his loan was assigned to LBPS.  *Id.* at 2.

According to Berry, LBPS contacted him in late 2010 and alleged that his loan was in default.

*Id.* at 3. After Berry explained the history of his loan account and that he was waiting on his loan to

---

applied two of these money orders, 68011744812 and 200939822776, to Berry's loan.  *Id.* at 8.

[3] The TPP was not signed by Chase.

**Memorandum Opinion and Order - Page 3**

be modified by Chase, Berry states that LBPS informed him that he would have to reapply for the modification and "to not worry, that we would be surprised at the quick turnaround for the loan modification." *Id.* Berry contends that he reapplied for loan modification. *Id.* Berry made a payment in March 2011, which LBPS accepted. *Id.* Plaintiffs then received a notice of default. *Id.* They also received a notice that the loan had been accelerated and that their home was posted for foreclosure sale on June 7, 2011. *Id.*

Plaintiffs then brought this action against Defendants on June 6, 2011. On December 5, 2011, Plaintiffs filed an Amended Complaint ("Complaint"). Defendants filed a counterclaim against Plaintiffs for breach of contract, suit on the note, and attorney's fees on April 27, 2012. Defendants also request a judgment permitting foreclosure on the Property pursuant to the Deed of Trust. On July 16, 2012, Defendants moved for summary judgment on all of Plaintiffs' claims and their counterclaims.

On March 29, 2013, the court granted in part and denied in part Defendants' First Motion for Summary Judgment. The court granted Defendants' Motion for Summary Judgment regarding all of Plaintiffs' claims against Defendants and dismissed them with prejudice. The court denied Defendants' Motion for Summary Judgment regarding Defendants' counterclaims against Plaintiffs for breach of contract, suit on the note, and attorney's fees. The court explained, however, that it denied the Motion for Summary Judgment regarding these counterclaims because there existed a genuine dispute of material fact as to whether Defendant Fannie Mae is the entity that currently holds the Note and/or Deed of Trust. Therefore, the court made clear that if Defendants could prove that Fannie Mae was the owner and holder of the Note and/or Deed of Trust, the court would grant Defendants' Motion for Summary Judgment regarding their counterclaims. On May 3, 2013,

Defendants filed their Second Motion for Summary Judgment and provided evidence that Fannie

Mae was in fact the holder and owner of the Note and/or Deed of Trust.  Defendants ask the court

to: (1) grant summary judgment on their counterclaims for breach of contract and suit on a note

against Plaintiffs in favor of Defendants; (2) declare that the following sums are secured by the Loan

Documents on the Property: the outstanding balance of the Note; prejudgment interest; post-

judgment interest; costs of court; (3) declare that Defendants may foreclose on the Property; and (4)

order that Defendants may recover its attorney's fees and costs.

## II.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas

Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary

judgment, the court is required to view all facts and inferences in the light most favorable to the

nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift

Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v.

Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.*  (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

**Memorandum Opinion and Order - Page 6**

IV.    **Analysis**

A.    **Breach of Contract**

The court has already discussed Defendants' counterclaim of breach of contract in its Memorandum Order and Opinion on March 29, 2013. The court determined that there was a valid and enforceable contract between Plaintiffs and CTX (Fannie Mae's predecessor); that CTX performed by lending Plaintiffs money to purchase their home; and that Plaintiffs were required to make monthly payments on the loan. The court found that Plaintiffs failed to make the requisite payments under the terms of the Note and Deed of Trust. The court therefore determined that there was a breach; however, the court needed to determine that the contract that Plaintiffs' breached was between Plaintiffs and Defendant. The court explained that Defendant Fannie Mae was not a party to the Note or the Deed of Trust and that it was seeking enforcement of the Note and Deed of Trust as a nonparty to such agreements. Finally, the court stated that Defendants have not produced any evidence to show that Fannie Mae was assigned the Note and/or Deed of Trust and prove that it was the legal owner and holder of the Note and/or Deed of Trust. The court explained:

> This misstep could have easily been avoided by Defendants producing a certified or verified copy of the assignment or assignments showing that Fannie Mae is the assignee of the Note and/or Deed of Trust. That Plaintiffs do not dispute that Fannie Mae is the current holder of the Note is of no moment. While there is evidence of a breach, there is no evidence to affirmatively show that the entity that may bring this breach of contract claim is Fannie Mae.

Ct.'s Mem. Op. & Order 34 (Mar. 29, 2013).

Defendants have now established that Fannie Mae was indeed assigned the Note and/or Deed of Trust and have therefore proved that it was the legal owner and holder of the Note and/or Deed of Trust. Fannie Mae was assigned the Note and Deed of Trust from the loan originator, CTX, as

shown in the Transfer and Assignment recorded in the Dallas County Real Property Records.  *See* App. in Supp. of Defs.' Second Mot. for Final Summ. J. ("Defs.' App."), Ex. A-6 and D-2. Additionally, the Note was specifically endorsed by CTX to Fannie Mae, as shown in the original endorsement included on the original Note.  *See Id*., Ex. A-4.  Finally, Seterus, a serving agent for Fannie Mae, has physical possession of the original Note in its offices.  *Id*. at 3.

Plaintiffs object to Exhibit A-6 because they allege that the Assignment from CTX to Fannie Mae is not a certified copy.  They contend that Exhibit A-6 is hearsay and unauthenticated. Defendants argue that, pursuant to Federal Rule of Evidence 803(14), records of documents that affect an interest in property are not hearsay if: (1) the record is admitted to prove the content of the original recorded document, along with its signing and its delivery by each person who purports to have signed it; (2) the record is kept in a public office; and (3) a statute authorizes recording documents of that kind in that office.  Defendants contend that: (1) the Assignment from CTX to Fannie Mae was admitted to prove that there was a validly executed and filed assignment of the Deed of Trust from CTX to Fannie Mae; (2) the original copy of the Assignment is kept in the Real Property Records office of Dallas County; and (3) the Texas Property Code § 11.001 authorizes recording documents of that kind in that office.  Additionally, pursuant to Federal Rule of Evidence 803(6), Defendants argue that the Assignment document should fall under another exception to the hearsay rule for records of regularly conducted activity.  The court determines that Exhibit A-6 does fall under the hearsay exception set forth in Rule 803(14), and Plaintiffs' objection is overruled. Even if Exhibit A-6 did not fall under the hearsay exception, Defendants provided a certified copy of the Transfer and Assignment.  *See id*., Ex. D-2.  Accordingly, the court determines that there is no genuine dispute of material fact as to Defendants' counterclaim for breach of contract, and

Defendants are entitled to judgment as a matter of law on this claim.  Although Plaintiffs reurge their arguments that no breach of contract occurred, the court stands by its earlier decision that a breach occurred and finds Plaintiffs' restated arguments unavailing.

**B.      Suit on the Note**

The court has also already discussed Defendants' counterclaim of suit on the note in its Memorandum Order and Opinion of March 29, 2013.  The court explained that in order to recover under the Note, Defendants did not need to prove all of the essential elements of a breach of contract, but they did need to establish "the note in question, that [defendant] signed the note, that [plaintiff] was the legal owner and holder thereof, and that a certain balance was due and owing on the note." Ct.'s Mem. Op. & Order 35 (Mar. 29, 2013) (citation omitted).  The court determined that Defendant "failed to establish all the elements to recover under the Note because Defendants have not demonstrated that Fannie Mae is the assignee of the Note and/or Deed of Trust, and, thus, is the legal owner and holder of the Note and/or Deed of Trust." *Id*.

As the court discussed above, Defendants have provided sufficient evidence demonstrating that Fannie Mae is the assignee of the Note and/or Deed of Trust, and is therefore the legal owner and holder of the Note and/or Deed of Trust.  Accordingly, the court determines that there is no genuine dispute of material fact as to Defendants' counterclaim for suit on the note, and Defendants are entitled to judgment as a matter of law on this claim.

### C.    Principal and Prejudgment Interest

Defendants are to inform the court, with supporting documentation, of the amount it contends it is owed by Plaintiffs with respect to principal and prejudgment interest as of March 29, 2013.[4]  In doing so, Defendants must state with specificity the manner in which they arrived at the principal owed and must set forth the amount of prejudgment interest requested, the rate on which it is based, and the authority for basing it at such rate.  This information must be provided to the court by **5:00 p.m., March 17, 2014**.  Plaintiffs may file a response no later than **5:00 p.m., March 20, 2014**.

### D.    Foreclosure

Defendants also seek a declaration from the court that they may foreclose on the Property. The Deed of Trust states: "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."  Defs.' App. 77.  As stated above, Plaintiffs received a notice that the loan had been accelerated and that their home was posted for foreclosure sale on June 7, 2011. Accordingly, the court declares that Defendants have the right to foreclose on the Property.

### E.    Attorney's Fees

Defendants seek attorney's fees and court costs pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.  Plaintiffs contend that Defendants have offered no evidence or case

---

[4] The court will allow prejudgment interest only until March 29, 2013, because it could have granted summary judgment on all matters had Defendants provided to the court in its first motion for summary judgment the information that it now provides in its second summary judgment motion.  Had the information initially been provided, the court could have entered a final judgment at the end of March 2013.  An award of prejudgment interest after March 29, 2013, under these circumstances, is neither fair nor equitable.

**Memorandum Opinion and Order - Page 10**

law to support their argument for an award of attorney's fees and that Defendants' request should

be denied.

Section 38.001 of the Texas Civil Practice and Remedies Code states that "[a] person may

recover reasonable attorney's fees from an individual or corporation, in addition to the amount of

a valid claim and costs, if the claim is for . . . an oral or written contract."  Additionally, the Deed

of Trust states:

> If the default is not cured on or before the date specified in the notice,
> Lender at its option may require immediate payment in full of all
> sums secured by this Security Instrument without further demand and
> may invoke the power of sale and any other remedies permitted by
> Applicable Law.  Lender shall be entitled to collect all expenses
> incurred in pursuing the remedies provided in this Section 22,
> including, but not limited to, reasonable attorneys' fees and costs of
> title evidence.

Defs.' App. 77.  Given that this is a breach of contract case and given that the Deed of Trust

establishes the availability of attorney's fees as a remedy, the court determines that Defendants are

entitled to attorney's fees.  The only issue to resolve is the amount of attorney's fees.  The amount

will be addressed postjudgment pursuant to Federal Rule of Civil Procedure 54(d)(2).  Defendants

must file a motion after the entry of judgment in accordance with this Rule with proper

documentation and authority.  Plaintiffs may file a response in accordance with the Local Civil Rules

of this district, and Defendants may reply in accordance with such local rules.  With respect to

documentation, Defendants must provide the court with sufficient documentation to determine the

necessity of the services rendered and the reasonableness of the hourly rate for services performed.

In this regard, time records must be provided to the court.  The court will decide the issue of amount

attorney's fees based upon the written submission of the parties, unless it determines that a hearing

is necessary on the matter.

**Memorandum Opinion and Order - Page 11**

## V.     Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists as to Defendants' counterclaims of breach of contract and suit on the note.  Defendants are therefore entitled to judgment as a matter of law on these claims.  The objections made by Defendants in their reply and the objections made by Plaintiffs in their subreply are **overruled as moot**.  Accordingly, the court **grants** Defendants' Second Motion for Summary Judgment and **dismisses with prejudice** this action.  The court **declares** that the following sums are secured by the Loan Documents on the Property: the outstanding balance of the Note; prejudgment interest; postjudgment interest; costs of court.  Further, the court **declares** that Defendants may foreclose on the Property once judgment is entered.  Finally, the court **determines** that Defendants are entitled to attorney's fees and costs, and the amount will be determined by subsequent motion practice. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58 once the court has the information regarding prejudgment interest and Plaintiffs' response.

**It is so ordered** this 13th day of March, 2014.

Sam A. Lindsay
United States District Judge